IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MARK A. WAGONER, | CV 15-112-GF-JTJ |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. SYNOPSIS

Mark A. Wagoner (Mr. Wagoner) seeks Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The Commissioner of the Social Security Administration (Commissioner) determined Mr. Wagoner has the residual functional capacity to perform work that exists in significant numbers in the national economy, despite severe impairments, and, therefore, is not disabled and not entitled to SSI benefits. The Commissioner's determination is supported by substantial evidence and is not based on legal error. Therefore, Mr. Wagoner's

Motion for Summary Judgment will be denied, and judgment will be entered in favor of the Commissioner.

## II.  JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g).  The parties consented to the undersigned conducting all proceedings in this matter, including the entry of judgment.  (Doc. 7)  The Great Falls Division of the District of Montana is the proper venue because Mr. Wagoner resides in Valley County, Montana.  (Doc. 2 at 2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

## III.  STATUS

On June 16, 2014, an administrative law judge (ALJ) decided that Mr. Wagoner was not eligible for disability benefits under Titles XVI of the Social Security Act.  (Doc. 11 at 13-37)  On July 14, 2014, Mr. Wagoner timely requested that the Social Security Administration review the ALJ's decision.  (*Id.* at 9)  The Appeals Council for the Social Security Administration denied Mr. Wagoner's request for review on October 30, 2015, making the ALJ's decision the Commissioner's final decision.  (*Id.* at 1-4)

Mr. Wagoner timely filed a complaint on December 30, 2015, seeking judicial review of the Commissioner's decision.  (Doc. 2)  Mr. Wagoner filed an

opening brief on June 30, 2016, requesting that the Court reverse the Commissioner's decision and order the payment of benefits to him. (Doc. 18) The Commissioner filed a response brief on July 27, 2016, and Mr. Wagoner filed a reply brief on October 24, 2016. (Docs. 20 and 29) The motion is ripe for decision.

## IV.    STANDARDS

### A.    Court's role

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(citing *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d

at 1070 (quoting *Edlund*, 253 F.3d at 1156).Where evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the

ALJ's conclusion must be upheld. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir.

2002).

The district court must consider the record as a whole, weighing both the

evidence that supports and detracts from the Commissioner's conclusion. *Green v.*

*Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not

supported by the record, but it may not substitute its findings for those of the

Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

### B.    Disability criteria

A claimant is disabled for purposes of the Social Security Act if the claimant

demonstrates by a preponderance of the evidence that (1) the claimant has a

"medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof for steps one through four, and the Commissioner bears the burden of proof for step five. *Id.* at 954. The five steps of the inquiry are:

1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If

so, the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.      Is the claimant able to do any work that he or she has done in the past?  If so, the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.      Is the claimant able to do any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*.

## V.  BACKGROUND

### A.      ALJ's determination

At step one, the ALJ determined that Mr. Wagoner has not engaged in substantial gainful activity since December 10, 2012, the application date.  (Doc. 11 at 15)  At step two, the ALJ found that Mr. Wagoner has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, status-post two microdiscectomy procedures, bipolar disorder, and personality disorder.  (*Id.* at 15)

At step three, the ALJ found that Mr. Wagoner did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed impairments.  (*Id*. at 18)

Before considering step four, the ALJ determined that Mr. Wagoner had the following residual functional capacity: he can perform the light work as defined in

20 C.F.R. §§ 416.967(b) with the following limitations:  he can walk for 15-30 minutes at one time; he can stand for up to two hours at one time; he can be on his feet somewhere between four to six hours total in an eight hour day; he can sit for 30 minutes to one hour at a time, and for at least six hours total in an eight hour day; he can lift up to 35 pounds on an occasional basis and 10 pounds or less on a frequent basis; he should avoid concentrated exposure to extreme cold and vibration; he cannot climb ladders or scaffolding; he can perform other postural activities occasionally; he should not have a job requiring dealing with the public, and any involvement with the public should only be accidental, brief, and superficial; he can have minimal close interaction with six or fewer coworkers; he must work in an environment without close supervision; he is incapable of high, constant focus throughout an eight hour day.  (*Id.* at 20)

At step four, the ALJ determined that Mr. Wagoner has no past relevant work.  (*Id.* at 36)

At step five, the ALJ determined that, considering Mr. Wagoner's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Wagoner could perform and, therefore, he has not been under a disability since December 20, 2012, the date he filed his application.  (*Id.* at 36-37.)

**B.   Mr. Wagoner's position**

Mr. Wagoner argues the Court should reverse the Commissioner's decision

and order the Commissioner to pay him SSI benefits because:

1.   The ALJ erred in not finding Mr. Wagoner disabled based upon Medical-Vocational Guidelines Rule 201.09.

2.   The ALJ erred by not giving proper weight to his treating physician's opinion that his impairments preclude him from working.

3.   The ALJ erred by not giving proper weight to his treating therapist's opinion that his mental impairments interfere with memory, concentration and moods required for work activity.

4.   The ALJ erred by making an adverse credibility finding regarding his pain and symptom testimony because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for doing so.

5.   The ALJ erred by using his activities of daily living to find his subjective complaints not credible because the record shows that his daily activities are very limited and far less than the activity required for sustained work activity.

6.   The Appeals Council erred by failing to remand the case based upon new and material evidence.

7.   The ALJ erred by adopting testimony from the vocational expert that conflicts with the Dictionary of Occupational Titles.

8.   The ALJ erred by failing to properly consider the lay testimony from his friend.

9.   The ALJ erred in assessing his residual functional capacity because it was not supported by the record.

(Doc. 18 at 3-4)

# VI.  ANALYSIS

The Court determines after a review of the record that the Commissioner's decision is reasonably supported by substantial credible evidence and is free of legal error.

## A.    Medical-Vocational Guidelines Rule 201.09.

Mr. Wagoner argues that because his "exertional level falls between" light work and sedentary work, that SSR 83-12 directs that the "lower rule" should be applied and, by so doing, he is disabled under Rule 201.09.  The Commissioner argues that SSR 83-12 directs the ALJ to consult with a vocational specialist in cases like Mr. Wagoner's and, because the ALJ did in Mr. Wagoner's case, the ALJ committed no error.  The Court agrees with the Commissioner.

SSR 83-12 provides the following "Adjudicative Guidance" :

> In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable for these types of cases.

*SSR 83-12.2.c.*

Mr. Wagoner's exertional level, according to the ALJ's RFC, is "in the middle" of sedentary work and light work.  SSR 83-12 guided the ALJ to consult with a vocational specialist.  The ALJ consulted a vocational specialist and by so doing complied with SSR 83-12's guidance.  Thus, the ALJ committed no error in evaluating Mr. Wagoner's claim under SSR 83-12.

## B.    Dr. Zasso's Opinions

Dr. Zazzo is a physician who provides treatment to Mr. Wagoner.  On May 6, 2014, Dr. Zazzo completed a "PHYSICAL/MENTAL IMPAIRMENT QUESTIONNAIRE" in which he expressed his opinion that Mr. Wagoner "probably cannot work at any job" because of his impairments which include, among other things, chronic daily orthopedic pain, mood swings, ability to sit less than two hours total in an eight hour day, ability to stand/walk less than two hours in an eight hour day, no ability to tolerate work stress, and the likelihood that he would absent from work, on the average, more than four days per month due to his impairments or treatment.  (Doc. 11 at 653-656)  Dr. Zasso also noted in this questionnaire that Mr. Wagoner within the 12 month period had experienced one or two episodes of decompensation of at least two weeks duration.  (*Id.* at 655)

The ALJ accorded Dr. Zazzo's opinions "limited weight."  Mr. Wagoner argues that the ALJ committed legal error by failing to give proper weight to Dr.

Zazzos' opinions and therefore Dr. Zasso's opinions should be credited as true. The Commissioner argues that the ALJ gave specific and legitimate reasons supported by substantial evidence in the record for giving Dr. Zazzos' opinions little weight and therefore committed no error.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1997) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* One such specific and legitimate reason is where the treating physician's opinion is not supported by the physician's treatment notes. *Connett v.Barnhart*, 340 F.3d 871, 874-75 (9th Cir. 2003). Another is where the treating physician's opinion is not supported by the record as a whole. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ stated the following reasons for giving Dr. Zazzo's opinions little weight:

[I]t is not consistent with the record as a whole. Dr. Zazzo's opinion is not supported by his own treatment notes, which show the claimant's bipolar disorder and chronic low back pain have generally been stable. Dr. Zazzo noted the claimant is euthymic on medications, that the claimant described his general health status as good, and his functional cognition was in tact. Further there is no episode of decompensation of extended duration in the record during the relevant period.

(Doc. 11 at 31-32.)

On April 2, 2014, (one month and two days before Dr. Zazzo completed the questionnaire) Dr. Zazzo examined Mr. Wagoner. (*Id.* at 645-646.) The treatment notes of this examination provide the following: Mr. Wagoner describes his general health status as good; Dr. Zasso describes Mr. Wagoner's "Psychiatric" system as "euthymic on meds"; Dr. Zasso describes Mr. Wagoner as having his "Functional cognition in tact." Dr. Zazzo's April 2, 2014, treatment note provides substantial evidence in support of the ALJ's determination that opinions Dr. Zazzo expressed in the May 4, 2014 questionnaire were not supported by his treatment notes.

Furthermore, although Dr. Zazzo stated in the questionnaire that Mr. Wagoner had suffered an episode of decompensation lasting at least two weeks within the 12 month period, the medical record fails to reflect such an episode. The absence of evidence in the medical record of an episode of decompensation lasting two weeks in the 12 month period is substantial evidence in support of the

ALJ's determination that opinions Dr. Zasso expressed in the questionnaire were not consistent with the record as a whole.

The ALJ did not error in giving Dr. Zazzo's opinions limited weight because he gave specific and legitimate reasons supported by substantial evidence for doing so.

## C.    Other Sources

In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Yet, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Id*. (citing 20 C.F.R. § 404.1513(a)). Therapists are defined as "other sources," § 404.1513(d), and are not entitled to the same deference. *Id.* (citing § 404.1527; SSR 06–03p). Lay persons such as friends and family members are also defined as "other sources." 20 C.F.R. § 404.1513(d)(4). The ALJ may discount testimony from these "other sources" if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d 111 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir.2010) (internal quotation marks omitted)).

### 1.    Amy Tipton, L.C.P.C

Amy Tipton is a licensed clinical professional counselor.  (Doc. 11 at 90.)

She met with Mr. Wagoner once on April 10, 2014, and she spoke with him on the

phone a few times as well.  (*Id.* 90 and 649-651)  Ms. Tipton does not qualify as a

medically acceptable treating source, but rather is an "other source."

Mr. Wagoner argues that the ALJ erred in giving Ms. Tipton's testimony

limited weight because "the medical record is in accord with her testimony."  The

Commissioner argues that the ALJ did not error because he gave germane reasons

supported by substantial evidence in the record for giving Ms. Tipton's testimony

little weight.

The ALJ initially determined that Ms. Tipton's statements should be

accorded little weight because they were not consistent with the record as a whole.

(Doc. 11 at 32.)  In support of this determination, the ALJ discussed that Ms.

Tipton's treatment note of the only time she saw him states that Mr. Wagoner's

symptoms included that his speech could be rapid, pressured, loud and he talked

excessively not allowing others to speak.  (Doc. 11 at 32, 649-651.)  Ms. Tipton's

April 10, 2014, treatment note, however, states that Mr. Wagoner had a normal rate

and rhythm of speech during evaluation.  (*Id.*)  Furthermore, Dr. Zazzo's treatment

notes between January 2014 and April 2014 also state that Mr. Wagoner's speech

was generally clear and coherent.  (*Id.* at 633, 636, 642 and 646.)

Next, the ALJ discussed Ms. Tipton's note that states Mr. Wagnoner has suicidal ideations once a year. (*Id.* at 650) Yet, the ALJ pointed out that Dr. Zazzo's treatment notes between January 2014 and April 2014 state that he was non-suicidal. (*Id.* at 633, 636, 642 and 646.) Furthermore, the ALJ noted that Ms. Tipton's treatment note states that Mr. Wagoner's was easily distracted and he was not able to stay on one topic very long. (*Id.* at 32 and 649-651.) The ALJ found this statement to be inconsistent with Dr. Volk's observations that Mr. Wagoner was able to focus for a relatively long period of time on tasks requiring intense concentration and persistence, and he displayed attention and concentration appropriate to the tasks and he worked diligently to completion. (*Id.* at 32, 565.)

Substantial evidence supports the first reason the ALJ gave for according Mr. Tipton's testimony little weight. Further, the fact that Ms. Tipton's testimony conflicts with medical evidence is a germane reason for discrediting her testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

The ALJ's other reason for according Ms. Tipton's testimony is that she only saw Mr. Wagoner on one occasion and spoke to him on the phone about three times. (*Id.* at 32 and 90.) Thus, the ALJ determined that Ms. Tipton lacked a longitudinal treatment history with Mr. Wagoner that would afford her testimony

more than limited weight.

The Court determines that this reason is germane to the weight to be given to Ms. Tipton's testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1202-1203, n.2 (9th Cir. 2001) (discussing that a treating physician's opinion may be entitled to little if any weight if the treating physician has not seen the patient long enough to "have obtained a longitudinal picture of the patient's impairment). This germane reason is also supported by substantial evidence in the record.

The ALJ's reasons for giving Ms. Tipton's opinions little weight are germane and supported by substantial evidence in the record. The ALJ, therefore, did not err in according Ms. Tipton's opinions little weight.

### 2. Brenda Helm

Ms. Helm is a friend of Mr. Wagoner. (Doc. 11 at 35, 273-281) Ms. Helm completed a "FUNCTION REPORT ADULT - THIRD PARTY" that Mr. Wagoner filed in support of his application for benefits. (*Id.* at 273-281) Ms. Helm's reports sets forth her observations concerning Mr. Wagoner's difficulties and limitations posed by his back and mental illness. (*Id.*) Ms. Helm is of the opinion that Mr. Wagoner will never be able to withstand the pressures of an employer-employee relationship, nor will be withstand the daily rigors that would be required. (*Id.*) The ALJ gave Ms. Helm's statements very little weight. (*Id.* at

35)

Mr. Wagoner argues that the ALJ erred in giving Ms. Helm's statements very little weight because her statements were consistent with the opinions of the medical providers. The Commissioner argues that the ALJ gave a germane reason for giving Ms. Helm's statements very little weight and therefore did not error in discrediting her statements.

Here, the ALJ discussed the reasons for giving Ms. Helm's statements very little weight as follows:

> The most critical factor in weighing such statements is whether they are consistent with the other evidence in the record. The statements by the claimant's friend, a non-medical source, are inconsistent with the evidence of record. The medical evidence of record, showing that his conditions are generally stable, and the claimant's testimony regarding his activities of daily living do not support the statements by the claimant's friend.

(*Id.*)

The Court determines that these reasons are germane to the weight to be given to Ms. Helm's statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that an ALJ may reject lay witness that are inconsistent with a claimant's activities); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (holding that an ALJ may reject lay testimony that conflicts with the medical evidence). The Court further determines that the ALJ's reasons are supported by substantial

evidence. Therefore, the ALJ did not error in giving Ms. Helm's statements very little weight.

### D.    Mr. Wagoner's Credibility

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.2009)). First, the ALJ must determine whether there is " 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.' " *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.2007)). If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give " 'specific, clear and convincing reasons' " in order to reject the claimant's testimony about the severity of the symptoms. *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036)  At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)). In evaluating the claimant's testimony, the ALJ may use " 'ordinary techniques of credibility evaluation.' " *Id.* (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010)).  If the

ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

Here, the ALJ determined that Mr. Wagoner's statement concerning the intensity, persistence and limiting effects of his alleged symptoms "are not credible to the extent they are inconsistent with the above residual function capacity assessment and the medical evidence of record." (Doc. 11 at 29.) The ALJ gave the following reasons for making this credibility determination: (1) Mr. Wagoner's inconsistent statements about marijuana use (*Id.* at 30, 65-67, 288-289); (2) Mr. Wagoner's inconsistent statements about his work history (*Id.* at 30, 52-53, 77, 563); (3) some of Mr. Wagoner's statements are inconsistent with the medical evidence of record. (*Id.* at 30, 84-85, 532-433, 582-583, 611-615.)

Initially, the Court determines that each of the reasons the ALJ gave for discounting Mr. Wagoner's testimony is specific, clear and convincing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming the ALJ's relying on claimant's conflicting statements about his marijuana and alcohol use as a specific, clear and convincing reason for discounting the claimant's testimony); *Para v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (holding that an ALJ may consider

inconsistencies either in the claimant's testimony or between his testimony and his conduct, including his work record, as a specific, clear and convincing reason for discounting a claimant's testimony); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (affirming the ALJ relying on conflict between the claimant's testimony of subjective complaint and medical evidence in the record as a specific, clear and convincing reason for discounting the claimant's testimony).

The Court also determines that there is substantial evidence supporting each of these reasons. Although Mr. Wagoner has a different view of the evidence, it is the ALJ's function to determine issues of credibility. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Furthermore, on review, the Court does not retry the case or alter the ALJ's credibility determinations and factual findings where the evidence is susceptible to more than one rational interpretation. *Moncada v. Chater*, 60 F.3d 521, 524-525 (9th Cir. 1995).

Because the ALJ gave specific, clear and convincing reasons for discounting Mr. Wagoner's credibility and these reasons were supported by substantial evidence in the record, the ALJ committed no error in evaluating Mr. Wagoner's credibility.

### E. Daily Activities

In evaluating the claimant's credibility, the ALJ may also consider "

'whether the claimant engages in daily activities inconsistent with the alleged symptoms.' " *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (quoting *Lingenfelter*, 504 F.3d at 1040).  While a claimant need not " 'vegetate in a dark room' " in order to be eligible for benefits, *Id.* (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  *Id.* (citing *Morgan v. Comm's of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id*. (citing *Turner*, 613 F.3d at 1225).

The ALJ determined that Mr. Wagoner's activities of daily living were an additional basis to discount his testimony because he determined that they were "inconsistent with a finding of disability."  (Doc. 11 at 31.)  In support of this determination, the ALJ relied on Mr. Wagoner's testimony that he cares for his four-year-old granddaughter about eight to ten hours per day, gets his kids off to school, cleans the house, goes grocery shopping, makes dinner with his daughter, helps with the kids schoolwork, and fixes things around the house. (Doc. 11 at 31, 69-72, 75-76.)

Mr. Wagoner argues that the ALJ erred in relying on Mr. Wagoner's daily activities to discredit his testimony because they are "far less than those required to work full time." (Doc. 18 at 21-22.) The Commissioner argues that the ALJ did not error because Mr. Wagoner's activities of daily living are inconsistent with his testimony of totally debilitating impairment.

In assessing a claimant's credibility, the ALJ may consider whether the claimant engages in activities inconsistent with his alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ relying on claimant's activities of daily living as a specific, clear and convincing reason for discounting the claimant's testimony where the claimant claimed to have totally disabling impairments was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth).

The ALJ's interpretation of Mr. Wagoner's testimony may not be the only reasonable one. It is, however, still a reasonable interpretation and is supported by substantial evidence; thus, it is not the Court's role to second-guess it. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.1989)). Consequently, the Court rejects Mr. Wagoner's argument that the ALJ improperly discounted his testimony based

upon his activities of daily living.

**F.      New and Material Evidence**

The ALJ held a hearing on Mr. Wagoner's claim on May 7, 2014.  (Doc. 11 at 13.)  The ALJ's decision denying Mr. Wagoner's claim is dated June 16, 2014. (*Id.* at 37.)  Mr. Wagoner submitted three MRI reports to the Appeals Council after the ALJ's decision.  (*Id.* at 658.)  The dates of the MRI reports are May 20, 2014, August 11, 2015, and May 14, 2015.  (*Id.*)  Mr. Wagoner also submitted a Physical/Mental Impairment Questionnaire dated August 6, 2014, that Dr. Zazzo completed.  (*Id.* at 2.) Of these documents, the Appeals Council included only the May 20, 2014, MRI report as part of the record.  (*Id.* at 658-659.)

The Appeals Council advised Mr. Wagoner on October 30, 2015, that it looked at the August 11, 2014 and May 18, 2015 MRI reports along with Dr. Zazzo's August 6, 2014 questionnaire, but because the ALJ's decided his case through June 16, 2014, that this new information related to a later time and it therefore did not affect the ALJ's decision.  (*Id.* at 2.)

On June 30, 2016, Mr. Wagoner filed under seal the August 11, 2014, and May 14, 2015, MRI reports and the Physical/Mental Impairment Questionnaire Dr. Zazzo's completed on August 6, 2014.  (Docs. 19, 19-1 and 19-2.)

Mr. Wagoner also filed another application for disability benefits on

23

December 30, 2015, (the same date he filed this action) in which he alleged an onset date of July 17, 2014.  (Doc. 30 at 2) On June 8, 2016, Mr. Wagoner received notice of a Disability Determination Explanation in relation to this application.  (Doc. 18 at 23)  On October 25, 2106, Mr. Wagner filed under seal the Disability Determination Explanation he received.  (*Id.*)

Mr. Wagoner's argues that the Disability Determination Explanation, the August 11, 2014, and May 14, 2015, MRI reports and the Physical/Mental Impairment Questionnaire Dr. Zazzo's completed on August 6, 2014, are new and material evidence and that the that the Commissioner erred in not remanding his claim to the ALJ to consider whether he was disabled in light of this new and material evidence.  (Doc. 18 at 22-25.) The Commissioner argues that the Commissioner did not error because the evidence about which Mr. Wagoner complains does not relate to the period on or before the ALJ's decision and it therefore is not material.

Under 42 U.S.C. § 405(g), the Court may, "at any time[,] order additional evidence to be taken into consideration before the Commissioner of Social Security."  To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute."  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9th

24

Cir.1982)). The claimant must additionally demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *Id.* (citing *Booz v. Secretary of Health and Human Servs.*, 734 F.2d 1378, 1380–81 (9th Cir. 1983)).

The August 11, 2014 and May 14, 2015 MRI reports and the Physical/Mental Impairment Questionnaire Dr. Zazzo's completed on August 6, 2014, all post-date the ALJ's June 16, 2014 decision, which decided that he was not disabled on or prior to that date. Thus, the Court determines that this evidence does not relate to the period on or before the ALJ's decision and, therefore, does not bear "directly and substantially on the matter in disputed." Mr. Wagoner also has failed to demonstrate how there is a reasonable possibility this new evidence would have changed the ALJ's decision. Therefore, this evidence is not material and the Court will deny Mr. Wagoner's request for remand for the Commissioner to consider this evidence.

In relation to the August 8, 2016, Disability Determination Explanation, it states that the "established onset date" of Mr. Wagoner's disability is "12/30/2015" (Doc. 30 at 11), which is more than 18 months after the ALJ's June 16, 2014 decision denying Mr. Wagoner's December 12, 2012 application for benefits.

In *Bruton v. Massamari*, 268 F.3d 824 (9th Cir. 2001), the court determined that a second, favorable determination was not new and material evidence. The claimant in *Bruton* filed an initial claim for benefits in 1993, which was denied in 1996. *Id*. at 826. While on appeal, the claimant filed a second application, which resulted in the Commissioner awarding benefits in 1999. *Id*. The claimant requested the district court remand the denial of his first application for consideration of the Commissioner's favorable determination on his second application. *Id*. at 827. The district court denied this request, and the claimant appealed. *Id*. The *Bruton* court affirmed the district court, determining that the favorable decision on the claimant's second application was not new and material evidence in relation to the claimant's first application because the two claims involved a different age classification, different medical evidence, and a different time period. *Id*. As such, the *Bruton* court reasoned, the Commissioner's decision to deny of the claimant's first application and award benefits on his second application was "not inconsistent." *Id*.

Mr. Wagoner relies on *Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010). In *Luna*, while the claimant's first, adverse determination from the Commissioner was on appeal, the claimant filed a second application for benefits. *Id*. at 1034. The ALJ rejected his first application on January 27, 2006. *Id*. at 1033. Nineteen months

later, on August, 20, 2007, the Commissioner approved his second application,

finding the claimant had been disabled since January 28, 2006, the day after the

ALJ denied his first application. *Id*. at 1034. The *Luna* court held that the

Commissioner's finding that the claimant was disabled on his second application

for benefits was new and material evidence warranting remand for consideration in

relation to the Commissioner's denial of benefits on the claimant's first application

for benefits. *Id*. at 1034-35. The *Luna* court reasoned, "the 'reasonable possibility'

that the subsequent grant of benefits was based on new evidence not considered by

the ALJ as part of the first application indicates that further consideration of the

factual issues is appropriate to determine whether the outcome of the first

application should be different." *Id*. at 1035. In reaching this decision, the *Luna*

court distinguished its decision from *Bruton* because the court could not "conclude

based on the record before [it] whether the decisions concerning Luna were

reconcilable or inconsistent." *Id.*

Mr. Wagoner failed to establish that the approval of his December 30, 2015,

application with a disability onset date of December 30, 2015, bears "directly and

substantially on the matter in dispute."  The reason is the ALJ's decision denying

Mr. Wagoner's December 10, 2012, application was rendered on June 16, 2014,

more than 18 months before the December 30, 2015, onset date set forth in the

Disability Determination Explanation. Mr. Wagoner also failed to demonstrate how there is a reasonable possibility this new evidence would have changed the ALJ's decision given the fact that it involves a time frame (December 30, 2015 - June 8, 2016) substantially different from that involved in the ALJ's decision (December 10, 2012 - June 16, 2014). Therefore, this evidence is not material and the Court will deny Mr. Wagoner's request for remand for the Commissioner to consider this evidence.

### G.    Vocational Expert Testimony

The vocational expert testified that in her opinion, considering Mr. Wagoner's age, education, work experience, and residual functional capacity, that Mr. Wagoner would be able to perform the requirements of a laboratory sample carrier, a small parts assembler, and a bindery machine feeder. (Doc. 11 at 36-37, 69-77.)

Mr. Wagoner argues that the ALJ erred in adopting this testimony from the vocational expert because the opinion that he can perform these jobs conflicts with the Dictionary of Occupational Titles descriptions for these jobs. Specifically, Mr. Wagoner argues he cannot work as a lab sample carrier because he would have to walk to perform this job and the ALJ's residual functional capacity assessment limits him to walking 15-30 minutes at a time. In relation to the two other

28

occupations, Mr. Wagoner argues that he "could not change positions at the frequency required by the RFC." Mr. Wagoner further argues that he could not work as a small parts assembler because the ALJ's RFC assessment precludes him from working in "jobs requiring high, constant focus throughout the workday."

The Commissioner argues that although Mr. Wagoner alleges a conflict between the occupations the vocational expert identified in her testimony and the DOT descriptions for these occupations he has failed to specifically show an actual conflict. The Commissioner further argues that the vocational expert took Mr. Wagoner's limitations into considering in determining whether he would be able to perform a given occupation. (*Id.* at 22-23)

Mr. Wagoner fails to show an actual conflict between the DOT for any of the three occupations the vocations expert identified in her testimony and his limitations. For that matter, Mr. Wagoner does not set forth any particular aspect from any of the three relevant DOTs that conflicts with his limitation or the vocational expert's testimony.

By way of example, the DOT for a laboratory sample carrier provides the following:

> Collects samples of products or raw materials for laboratory analysis, performing any combination of following tasks: Turns valves or dips sample container to transfer liquid samples from pipeline, processing equipment, tanks, or other vessels to test tubes, bottles, or buckets.

29

Transfers dry samples, such as ore, grain, crystals, powder, or granular material to containers, using shovel, hand scoop, sample stick, or hand tool. Labels sample containers with identifying data, location of sample, and time collected. Delivers samples to laboratory for analysis. Cleans sample containers, using specified cleaning agents and brushes or scrapers. Gathers samples at specified locations, stages of processing, and time interval. May collect samples of radioactive waste, following prescribed safety procedures, and be designated Sampler, Radioactive Waste (chemical).

*DOT 922.687-054.*

This DOT provides that many tasks are performed in connection with this occupation and it is not limited to "delivering" samples by walking nor are there any set time frames provided in relation to the amount of walking required at a time to perform this occupation. *DOT 922.687-054.* Because the DOT for the laboratory sample carrier does not have specific walking requirements, there is no conflict between the DOT and the vocational expert's testimony that Mr. Wagoner's would be able to perform this job with the limitation of walking no more than15-30 minutes at a time.

Mr. Wagoner has failed to establish a conflict between his limitations and the DOTs for the three jobs the vocational expert testified he could perform. Therefore, the ALJ did not commit error by adopting the vocational expert's testimony.

**H.    Residual Functional Capacity and Hypothetical to Vocational Expert**

## 1.    RFC

The ALJ determines residual functional capacity based upon medical records, physicians' opinions, and the claimant's description of her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(3). "The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) .

Mr. Wagoner argues that the ALJ's RFC assessment is erroneous because (1) it is not consistent with Dr. Zazzo's assessment of his limitation; (2) the ability to be on his feet "somewhere between 4 to 6 hours total in an 8-hour day" creates an RFC that is open to interpretation; (3) his anger outbursts "preclude him from sustaining full time work at any level"; and (4) his "upper body limitations due to the residuals from the burns to his body" were found to be "nonsevere."

The Commissioner argues the ALJ did not err because (1) the ALJ properly rejected Dr. Zazzo's opinions; (2) the ALJ properly consulted a vocational expert in relation to Mr. Wagoner's ability to be on his feet; (3) the ALJ properly rejected Dr. Mozer's opinions about Mr. Wagoner's angry outbursts; and (4) the ALJ properly rejected Dr. Fernandez's opinion about limitations due to upper body limitations. The Commissioner also argues in relation to Drs. Fernandez and Mozer that because Mr. Wagoner does not make any specific argument about how

the ALJ erred in rejecting their opinions that he has thereby waived the issue.

The Court determines, as discussed above, that the ALJ properly rejected Dr. Zazzos's opinions and that the ALJ properly consulted a vocational expert in relation to the "somewhere between" issue. The Court further determines that Mr. Wagoner failed to make any specific argument about how the ALJ erred in rejecting the opinions of Drs. Fernandez or Mozer, and that even if he had made such an argument, it would have been rejected because the ALJ properly rejected their opinions. The Court, therefore, determines that the ALJ's assessment of Mr. Wagoner's residual functional capacity is support by substantial evidence and is not based on legal error.

### 2. Hypothetical to Vocational Expert

When a claimant's ability to perform a full range of a particular category of work is limited, the ALJ may use the services of a vocational expert ("VE"). 20 C.F.R. § 404.1566(3). In order for the testimony of a VE to be considered reliable, the hypothetical posed must include "all of the claimant's functional limitations, both physical and mental" supported by the record. *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)). It is, however, proper for an ALJ to limit a hypothetical to only those restrictions that are supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179,

184 (9th Cir. 1995) (citing *Magallenes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989)).

As discussed above, the ALJ did not error in evaluating the evidence including Mr. Wagoner's testimony, Dr. Zazzo's opinions, the other source evidence, and the vocational expert's testimony. The ALJ's hypothetical to the vocational expert incorporated the limitations that the ALJ found to be supported by substantial evidence in the record. Although the ALJ's evaluation of the evidence and Mr. Wagoner's limitations does not comport with how Mr. Wagoner would evaluate the evidence and his limitations, where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954. Such is the case here, and therefore, the Court finds no error in the ALJ's hypothetical to the vocational expert.

## VII. CONCLUSION

The ALJ's determination is supported by substantial evidence and is not based on legal error. Mr. Wagoner failed to meet his burden of proving that he is disabled.

Therefore, the undersigned issues the following:

## ORDER

1. Mr. Wagoner's Motion for Summary Judgment (Doc. 10) is

   **DENIED**.

2. The Clerk of Court is directed to enter judgment in favor of Defendant

   CAROLYN W. COLVIN, Acting Commissioner of Social Security.

DATED this 31st day of January 2017.



John Johnston
United States Magistrate Judge